UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SCOTT PATRICK CAMPBELL,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>    Defendant. | NO. CV-11-202-RHW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are cross-Motions for Summary Judgment, ECF Nos. 12 and 16. The motions were heard without oral argument. Plaintiff is represented by Lora Lee Stover. Defendant is represented by Franco L Becia, Special Assistant United States Attorney. Plaintiff brings this action seeking review of the final decision of the Secretary denying Plaintiff's application for benefits under Title II and Title XVI of the Social Security Act.

**I.    Jurisdiction**

Plaintiff's claim is properly before this Court pursuant to 42 U.S.C. § 405(g). On March 4, 2008, Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplement Security Income (SSI). Plaintiff claims disability beginning on January 22, 2007. After benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held on November 10, 2009, in Spokane, Washington. Plaintiff, who was represented by counsel, appeared and testified, along with Jay Toews, Ph.D, and Richard G. Taylor. Administrative Law Gene Duncan presided

over the hearing.

The ALJ denied benefits on December 7, 2009 (Tr. 8-20) and the Appeals Council denied review (Tr. 1-5).

**II.     Sequential Evaluation Process**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, proceed to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

**III.   Standard of Review**

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 .S.C. § 405(g)). Substantial evidence is "more than a mere scintilla,"

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.

Plaintiff was 45 years old at the time of the hearing. He lives in Loon Lake, Washington (Tr. 39). He graduated from high school and took some classes at the community college (Tr. 40). He obtained a certificate for a music recording engineering program. *Id.* In 1999, he sustained an electric injury to his left arm and was "hit" with a 220+ volt jolt on his left side (Tr. 62). In 2000, he fractured his clavicle when he was hit with a heavy beam (Tr. 57). He testified that he still experiences discomfort in this region.

Plaintiff complains of constant pain in his neck and lower back (Tr. 63). He smokes about three or four bowls of marijuana a day to control his chronic pain

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

(Tr. 42). He also testified that he has trouble dealing with superiors, and he feels anxious in crowds of people (Tr. 47).

## V. The ALJ's Findings

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 22, 2007 (Tr. 13). The ALJ noted that although Plaintiff worked after the alleged disability onset date, the work was below substantial gainful level. *Id.*

At step two, the ALJ found that the claimant had a severe impairment that was affirmed through medical evidence. *Id.* Specifically, the ALJ identified the following severe impairments: clavicle fracture; left shoulder bursitis; muscle injury; numbness in left index, ring finger and palm; C5-C6 disc spurring; L4-5 moderate disc bulge and moderate foraminal stenosis; left shoulder weakness and brachial plexus injury. *Id.* The ALJ found that Plaintiff had a non-severe impairment of anal fissures, found Plaintiff's impairment of depression and/or personality disorder to be non-severe and concluded that it did not cause more than minimal limitations in his ability to perform basic mental work activities. *Id.* Finally, the ALJ concluded that Plaintiff's allegations of migraines or seizures do not rise to a medically determinable impairment (Tr. 13).

At step three, the ALJ found that Plaintiff's impairment did not meet or was equal to the listed impairments in 20 CFR Part 404, Subpart P, App. 1 (Tr. 16).

At step four, the ALJ determined that Plaintiff could not do the past work of welder or laborer. *Id.*

At step five, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work[1] as defined in 20 CFR §§ 404.1567(b) and

---

[1]Light exertional level work consists of the ability to: lift and/or carry and push and/or pull up to 10 pounds frequently and 20 pounds occasionally; sit up to

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 5

416.967(b), with the following additional limitations:

> only frequently balancing, occasional postural limitations, no ladder climbing, only occasional extended reaching with the left upper extremity; no overhead work; frequently gripping and handling; occasional fine fingering with the left upper extremity; no frequent turning of his head; seldom upward gazing; the ability to take one to three minutes at a job station to move about each hour at that station; limited superficial public contact; and not intense interaction with others.

*Id.*

The ALJ found that Plaintiff was capable of performing past relevant work as a cashier II and delivery driver, and therefore, was not disabled as defined by the Social Security Act (Tr. 22-23).

### VI. Issues for Review

1. Whether the ALJ erred in disregarding the opinions of Plaintiff's providers and consultive examiners regarding Plaintiff's conditions;
2. Whether the ALJ erred in assessing Plaintiff's residual functional capacities;
3. Whether the ALJ failed to pose a proper hypothetical to the vocational expert;
4. Whether the ALJ erred is assessing Plaintiff's credibility;
5. Whether the evidence taken from the record as a whole supports the ALJ's decision that Plaintiff is not disabled.

### VII. Discussion

#### 1. **The ALJ properly considered the opinions of Plaintiff's providers and consultive examiners**

Plaintiff argues that the ALJ improperly evaluated the medical opinions of his provider, Dr. Chandra Reddy, and the consultive examiners, Dr. Mabee and Dr. Arnold.

---

6 hours in an 8 hour day with normal breaks; stand and/or walk at least 6 hours in an 8 hours day with normal breaks; and occasionally stoop (Tr. 16).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

Dr. Reddy defined Plaintiff's overall work level as sedentary. She noted marked[2] severity for chronic pain syndrome, cervical disc degeneration, and lumbar disc degeneration, with moderate[3] severity for depression (Tr. 409). Sedentary work means the ability to lift 10 pounds maximum and frequently lift and/or carry such articles as files and smalls tools. *Id.* A sedentary work may require sitting, walking and standing for brief periods. *Id.*

The ALJ indicated that he considered Dr. Reddy's opinion in identifying Plaintiff's residual functional capacity, and concluded that the light work level was analogous to Dr. Reddy's opinion because it took into account the restrictions and limitations gleaned from the bulk of the evidence in the case and her opinion (Tr. 21).

Dr. Mabee indicated that it was very likely that Plaintiff was over-reporting his symptoms (Tr. 286). Specifically, Plaintiff rated his level of depression at 42 on the Beck Depression Inventory, but a recent study found that there were no clinically depressed patients who endorsed problems totaling more than 40 points. *Id.* A score of 42 suggested exaggeration of depression. Dr. Mabee noted that during the two days of testing, Plaintiff did not present any complaints of depression, and no depressive symptoms were noted. *Id.* Likewise, Plaintiff's score on the Beck Anxiety Inventory was far beyond the cutoff score for exaggeration. *Id.* Again, Dr. Mabee noted that Defendant did not present an appearance of anxiety. *Id.* Dr. Mabee concluded that Plaintiff indicates strong antisocial tendencies, but most of the scores on the psychological tests were average (Tr. 294). When explained this, Plaintiff suggested that he had PTSD from his divorce. *Id.* Ultimately, Dr. Mabee concluded that Plaintiff did not have any

---

[2]Marked is defined as: very significant interference with the ability to perform one or more basic work-related activities (Tr. 409).

[3]Moderate is defined as: having significant interference with the ability to perform one or more basic work-related activities (Tr. 409).

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

debilitating emotional problems and his IQ and memory were sufficient for him to be able to work successfully (Tr. 295).

In his assessment, Dr. Arnold noted moderate oppressed mood, mild suicidal trends, mild social withdrawal, mild hallucinations, and marked physical complaints (Tr. 413). He rated Plaintiff's functional capacities as moderately limited in a number of areas[4], and markedly limited in the ability to relate appropriately to co-workers and supervisors (Tr. 414).

In his written narrative, Dr. Arnold reflected that Plaintiff's complained of ringing in his ears a lot, and that he sometimes hears somebody talking from a distance (Tr. 418). Dr. Arnold suggested the Plaintiff tended to overreport on the psychological assessments. *Id.* Notably, Plaintiff reported to Dr. Arnold that he used marijuana "for pain" two to six times a month, denied ever abusing prescription or OTC medication, and denied a history of chemical dependency treatment[5] (Tr. 417). In his assessment, Dr. Arnold noted moderate oppressed mood, mild suicidal trends, mild social withdrawal, mild hallucinations, and marked physical complaints (Tr. 413). He rated Plaintiff's functional capacities as moderately limited in a numb of areas, and markedly limited in the ability to relate appropriately to co-workers (Tr. 414).

With respect to Dr. Arnold's opinion, the ALJ gave Dr. Arnold's opinions some weight, but noted that his opinion was inconsistent with Plaintiff's testimony as well as Dr. Mabee's and Dr. Toews' testimony (Tr. 20). He noted that Dr.

---

[4] Ability to understand, remember, and follow complex (more than two step) instructions; ability to exercise judgment and make decisions; ability to perform routine tasks; ability to interact appropriately in public contacts; and ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.

[5] It appears that Plaintiff under reported his marijuana use to Dr. Arnold.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

Arnold deferred elaboration to another source, or opined that he did not have enough information to gage Plaintiff's intellect. *Id.* The ALJ found that Dr. Arnold did not provide any objective medical facts or diagnostic testing to support the conclusion that Plaintiff had any cognitive limitation. *Id.* The ALJ discredited Plaintiff's self-reported symptoms. *Id.*

In a disability proceeding, the treating physician's opinion is given special weight because he is employed to cure and has a greater opportunity to observe the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). Nevertheless, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). An ALJ does not need to accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F. 3d 1211, 1216 (9th Cir. 2005).

To the extent that the ALJ's residual functional capacity conflicted with Dr. Reddy's conclusion that Plaintiff was capable of sedentary work, the ALJ adequately supported his conclusion by specific, legitimate reasons that are supported by substantial evidence. The ALJ's conclusion that Plaintiff was not disabled was consistent with Dr. Mabee's conclusion that Plaintiff was capable of working. The ALJ properly discounted Dr. Arnold's conclusions given Plaintiff's tendencies to over exaggerate his psychological problems. The ALJ properly relied on Dr. Toews' observations that Plaintiff has a tendency to subjectively assert that he is in very poor health (Tr. 19). Also, the ALJ noted that there was no

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 9

objective medical facts or diagnostic testing to conclude that Plaintiff had significant limitations related to muscle spasms, nerve root compression or radiculopthy (Tr. 14). An MRI of Plaintiff's shoulder showed no significant findings. *Id.* Dr. Rose specifically indicated that "there is no corroborating data to document degree of nerve deficits, if present, based on current medical source data." (Tr. 316).

The ALJ properly considered the opinions of Plaintiff's providers and consultive examiners.

### 2. The ALJ properly assessed Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ ignored the effect of his pain, as well as his limitations regarding fingering, handling and push/pull movements as a result of his upper extremity impairments in determining his Residual Functional Capacity.

Plaintiff's argument that the ALJ improperly assessed Plaintiff's Residual Functional Capacity as light exertional level work with certain restrictions is, in essence, a restatement of the argument that the ALJ improperly discredited Dr. Reddy's conclusion that Plaintiff could only work at a sedentary level. However, as set forth above, the ALJ properly considered all of the evidence in the record, and all of the testimony from the providers in determining that Plaintiff has a residual functional capacity to perform light exertional level work.

### 3. The ALJ posed a proper hypothetical to the vocational expert

At the hearing, the ALJ posed the following hypothetical to Richard Taylor.

> Assume you're dealing with an individual who's the same age as the claimant, has the same educational background, and same past work experience. And further assume that the claimant retains a residual functional capacity for routine self-skilled light work with the following additional limitations: frequent balancing, occasional postural, occasional postural limitations; no ladder climbing; occasional extended reach with the left upper extremity; no overhead work; frequent gripping, handling, and occasional fine fingering with the left upper extremity, no frequent turning of the head; seldom make an upward gaze; may take one to three minutes as a job station to move about every hour at that station; limited to superficial public

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

contact; and no intense interaction with others. (Tr. 92).

The ALJ then posed additional limitations, including "stand or walk for four hours in an eight hour day." (Tr. 94). Mr. Taylor opined that this additional limitation would affect completing the job of Cashier 2 and plastic bottle maker, but would not affect the job of delivery driver. *Id.*

Plaintiff's counsel then provided the following hypothetical:

> same education, and past relevant work, and age of the claimant. This particular hypothetical worker is only capable of performing work at the sedentary level of exertion with a sit/stand option. This worker should not be ever on ladders, scaffolds, things of that nature. This hypothetical worker does not have the capacity to perform extended reaching movements with the left arm, which is non-dominant, but gripping, handling, and using the left hand for fine fingering, including in conjunction with, or bilateral tasks need to be attended to, along with those mental restrictions as given by . . . . Judge Duncan in terms of superficial public contact, no intense interactions with others, this person cannot be in a work environment where there would be constant change; if there was to be change in the work environment, written instruction would be necessary.

(Tr. 96-97).

Counsel clarified that the restriction would include that the person could seldom complete gripping, handling, and fine fingering (Tr. 96).

Plaintiff argues that the ALJ failed to pose an adequate hypothetical because the question posed did not fully represent Plaintiff's physical impairments nor did it accurately portray his psychological impairments or his pain complaints. Again, this argument, in essence, is a restatement of the argument that the ALJ improperly discredited Dr. Reddy's conclusion that Plaintiff could only work at a sedentary level. However, as set forth above, the ALJ properly considered all of the evidence in the record, and all of the testimony from the providers in determining that Plaintiff was capable of working as a cashier 2 or a delivery driver. Moreover, as addressed below, the ALJ did not err in discounting Plaintiff's pain complaints.

**4.    The ALJ did not err in assessing Plaintiff's credibility**

The ALJ concluded that Plaintiff's statements concerning the intensity,

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

persistence and limiting effects of his symptoms were not fully credible to the extent they were inconsistent with his residual functional capacity to perform light work with additional limitations (Tr. 18-19). As noted above, the record was void of any objective medical facts or diagnostic testing on which to conclude that Plaintiff had significant limitations related to spasms, nerve root compression or radiculopathy, and an MRI on his shoulder showed no significant findings (Tr. 14)

Plaintiff testified that he has a reduced range of motion in his left shoulder, a prominent and 'uncontrollable shake" when overextending his arm above shoulder level, an inability to hold things, or "manipulate like before" along with a loss of "muscle tone.' (Tr. 60). He stated that he cannot grip anything over 5-7 pounds without dropping it (Tr. 61). He testified that he could not stand or sit comfortably and was unable to turn his head because of his neck pain. He stated that the pain alone diminished his focus and ability to work (63-64, 66). During the relevant periods, Plaintiff did not participate in treatment to alleviate his pain symptoms, or to treat his alleged mental disorders (Tr. 18).

The ALJ properly discounted Plaintiff's testimony regarding the level of his pain and discomfort. In order to find a claimant's testimony regarding severity of his impairments unreliable, the ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted). In doing so, the Court engages in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Once a "claimant meets this first test, and there is not evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering clear and

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

convincing reasons for doing so." *Id.*

Here, the ALJ found that Plaintiff met the first step, that is, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms (Tr. 19). However, the ALJ found that Plaintiff's self-reported symptoms were generally unreliable and exaggerated. This conclusion is born out by the record, including the treatment providers conclusions that Plaintiff tended to over-report and exaggerate his physical limitations. On the other hand, Plaintiff's self-reported limitations were not born out by the record.  For instance, Dr. Rose concluded that Plaintiff's motor strength was 4-5/5 in all elements affecting the shoulders, elbows, wrists, hips, knees, and ankles.  He did not identify any restrictions or limitations that was inconsistent with the current residual functional capacity identified by the ALJ (Tr. 316). The ALJ did not err in negatively assessing Plaintiff's credibility.

In conclusion, the evidence taken from the record as a whole adequately supports the ALJ's decision that Plaintiff is not disabled.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

3.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

 **IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 14th day of November, 2012.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

Q:\RHW\aCIVIL\2011\Campbell\order.wpd

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 14